US DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WASHINGTON MUTUAL BANK

VERSUS

BRIAN KENNETH FOSTER,
ET AL.

CIVIL ACTION

NO 06-622-JJB

## RULING ON MOTION FOR ATTORNEY'S FEES

### Background

On September 25, 2008, this Court found that Washington Mutual violated Truth in Lending Act provisions and that the Fosters were entitled to $2000.00 in statutory penalties to be used as offset against our previous judgment in favor of Washington Mutual.[1] Pursuant to this Court's request, the Fosters submitted their claim for attorney's fees on October 10, 2008.[2] However, that submission included time not spent relative to Truth in Lending Act Claims.[3] The Court therefore ordered the Fosters to supplement their submission with a redacted "detail transaction file list" that exercised "billing judgment" and specified what hours were claimed as to the Truth in Lending Act claim.[4]

---

[1] Doc. 60. Citing 15 U.S.C. §1640(a)(3), this Court stated: "The Fosters are entitled to an award of attorney's fees incurred in the successful litigation of their claim for statutory damages under the TILA and the costs associated with that claim....The Fosters are not entitled to reasonable attorney's fees in relation to the litigation of any other claims." Doc. 60, page 6.

[2] Doc. 61.

[3] Indeed, counsel for the Fosters noted in the submission, "it is difficult on any rational basis to differentiate a number of activities such as conferences with clients, review of records, drafting and filing of pleadings relative to defenses and counter-claims, and to arrive at and submit a claim for attorneys' fees related to one claim only." Doc. 61, page 2.

[4] Doc. 62. As we noted in that order:
> A party seeking attorney's fees has the burden of showing the reasonableness of the hours billed, which requires some evidence of "billing judgment." Walker v. City of

1

We also ordered that "all costs other than fees of counsel (and paralegals) should be excluded from the fee application but may be separately submitted to the Clerk under Rule 54."[5] Pursuant to our order, the Fosters filed a revised submission, in which claimed attorney's fees were reduced from $32,253.64 to $23,602.01.[6] JP Morgan Chase Bank ("JP Morgan")[7] has filed an opposition[8] to the Fosters' revised submission.

## Analysis

An award of attorney's fees for violations of the TILA is proper even without the Fosters successfully showing actual damages as a result of the violation. "The Congressional goals underlying the Truth-in-Lending Act include the creation of a

---

> Mesquite, TX, 313 F.3d 246, 251 (5th Cir. 2002). Billing judgment typically is shown by documentation of both the hours charged and the hours written off. *Id.* Billing judgment means writing off unproductive, excessive or redundant hours. Walker v. U.S. Dept. of Housing and Urban Development, 99 F.3d 761, 769 (5th Cir. 1996).

[5] Doc. 62.

[6] Doc. 65. Counsel for the Fosters submitted an affidavit in which he asserts that a deduction by percentage resulted in a deduction of $5,426.27 and that "in an effort to fairly deduct time not related to TILA issues, appearer assigned an additional 10% of the total billable time as a deduction ($3,225,36)." Doc. 65-2, page 2. Further, counsel for the Fosters states that he "had no supportable way of concluding what portion of meetings with clients, and attendance at their depositions should be deducted. While TILA issues were not the exclusive issue covered, appearer could likewise not conclude that such meetings or depositions would have been appreciably shorter absent other issues." Doc. 65-2, page 2. In opposition, JP Morgan argues:

> The Fosters' position is that if the task at issue included some discussion of the TILA, then the entire amount should be awarded. JP Morgan Chase believes that the opposite should be true. If the task at issue took place only because of the claim made under the TILA for statutory damages, then perhaps fees should be awarded. But if the task at issue would have taken place even had the TILA counter-claim not been filed, then the Fosters should not be awarded those fees.

Doc. 66, page 6.
This Court believes a middle ground between the two extremes – counting the entire amount of hours spent if the TILA counterclaim was at all addressed and counting none of the time unless the TILA counterclaim was the only thing addressed – is most appropriate.

[7] The court granted Washington Mutual Bank's motion to substitute parties on October 24, 2008 (doc. 64) and substituted JP Morgan Chase Bank in the place of Washington Mutual.

[8] Doc. 66.

2

system of private attorneys general to aid in effective enforcement of the Act....The amount of the fee should be set in accordance with the same principles that would govern the assessment of fees in general."[9]

In determining an award of attorney's fees, this Court will, in its discretion, consider the factors set out by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*:[10] (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained, including the amount of damages and the decision's effect on the law; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

JP Morgan asserts that the Fosters' degree of success should be taken into account when determining a proper fee award, and point out that it "prevailed not only on the main demand but also on almost the entire counter-claim."[11] JP Morgan argues that attorney's fees should be awarded in an amount equal to the statutory damages awarded to the Fosters, $2000.00.[12] However, "attorney's fees are not limited by the amount of...recovery"[13] and as the Fosters' point out:

---

[9] McGowan v. Credit Center of North Jackson, Inc. 546 F.2d 73, 77 (5th Cir. 1977) (Internal citations omitted).
[10] 488 F.2d 714, 717-719 (5th Cir. 1974).
[11] Doc. 66, page 1. The Fosters brought counterclaims under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and the Truth in Lending Act. Doc. 2.
[12] Doc. 66, page 8.
[13] Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 802 (6th Cir. 1996).

3

> an attorney fee award artificially limited in relation to the maximum statutory damages which could be awarded in a consumer lending type of case would render it impractical, if not impossible for any consumer in the position of the Fosters herein to rationally contest or litigate any suit or claim based on a violation of the Truth-in-Lending Act.[14]

While we agree with the Fosters that limiting an attorney fee award to the same amount as statutory damages would impede consumers from bringing claims under the TILA, the amount involved and the results obtained are proper inquiries as set forth in *Johnson*.[15] However, simply awarding attorney's fees in at the same amount as statutory damages would be an abuse of discretion.

JP Morgan also argues that the fees submitted by the Fosters should be reduced because the Fosters were offered a settlement by Washington Mutual[16] and because even in the Fosters' second submission of attorney's fees, counsel failed to exercise billing judgment. JP Morgan points out that contrary to this Court's order, counsel for the Fosters failed to excise costs. In determining the proper attorney fee award, this Court will subtract all costs not attributable to work by attorneys or paralegals.[17] Further, JP Morgan asserts that much of the research time still included in the Fosters' submission

---

[14] Doc. 61, page 3.

[15] In support of its argument that attorney fees should be awarded in the same amount as statutory damages, JP Morgan cites *Earl v. Beaulieu*, 620 F.2d 101, 103 (5th Cir. 1980), in which plaintiff's attorney fee award was reduced from $1,020.00 to $220.00, an "amount equal to the entire and undisputed damages recovered in its case" and *Mirabel v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978) a per curiam opinion in which the court noted that "to grant attorney's fees greatly in excess of a client's recovery requires strong support from circumstances of the particular case" and that "to grant large attorney's fee awards on the basis of relatively small injury would encourage suits which do not further the client's interest or the public's interest." However, the *Mirabel* dissent noted, "it is...abusive to award fees solely by the amount of recovery obtained....A provision for attorney's fees helps assure that enforcement will take place. But such a provision is rendered meaningless unless attorneys for successful parties are given reasonably adequate compensation for their services." *Id.* at 733-734. This Court finds the reasoning set forth by the *Mirabel* dissent persuasive.

[16] Washington Mutual offered a settlement in which the Fosters would pay $110,000.00. The Fosters counter offered with $30,000.00. Affidavit of settlement efforts, Doc. 49.

[17] Review of the Foster's second submission reveals $812.41 in costs not attributable to attorneys or paralegals.

"clearly was performed in defense of the main demand, not in prosecution of the statutory penalties claim under the TILA.".[18] We agree with JP Morgan in this respect, and while we are aware of the difficulty in parsing out time spent on individual claims, we note that the burden of doing so falls upon the shoulders of the Fosters.

Looking to the *Johnson* factors for guidance, we also find that the time and labor required to successfully litigate a claim for statutory damages under the TILA was minimal compared to the time necessary to defend against Washington Mutual's main demand. Further, the Fosters asserted a number of counterclaims, only one of which was successful, thus even the time spent litigating counterclaims cannot wholly be attributed to the Foster's TILA claim. This case did not present a novel or complex issue, nor do we find that the case was "undesirable" from the point of view of the Fosters' attorney or that undue time limitations were imposed upon counsel. Additionally, while not determinative, the amount of damages recovered by the Fosters was minimal, and our decision on the main demand and counterclaims is not one that will have a great effect upon the law.

Based upon the above considerations, the court finds that the Fosters' submission for attorney's fees should be further reduced. In the Fosters' second submission, a fee award of $23,602.01 was requested. Subtracting costs not properly included pursuant to our previous order, this amount is reduced to $22,789.60. Of this remaining amount, we award 90%.

---

[18] Doc. 66, page 7.

Accordingly, an award of attorney's fees in the amount of $20,510.64 is hereby ordered and is to be used as set off against our previous judgment in favor of Washington Mutual.

Signed in Baton Rouge, Louisiana, November 24, 2008.

JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA